IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SABIEN A. TAPLIN,<br>TDCJ No. 02261789,<br><br>    Petitioner,<br><br>V.<br><br>BOBBY LUMPKIN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>    Respondent. | § § § § § § § § § § § § § | W-21-CV-192-ADA |

## ORDER

Before the Court are Petitioner Sabien A. Taplin's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent Bobby Lumpkin's Response (ECF No. 8). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In February 2019, Petitioner was charged by indictment with one count of assault of a public servant. (ECF No. 9-13 at 4-5.) On April 4, 2019, the State filed a notice of intent to seek enhanced punishment based on Petitioner's January 2012 conviction for aggravated assault with a deadly weapon. (*Id.* at 22.) On April 19, 2019, a jury convicted Petitioner of assault of a public servant; he pleaded true to the felony enhancement; and the jury sentenced him to fourteen years imprisonment. *State v. Taplin*, No. 7999 (426th

1

Dist. Ct., Bell Cnty., Tex. Apr 19, 2019). (ECF Nos. 9-13 at 56-58; 9-22 at 7.) The following is a summary of the factual allegations against Petitioner.

> The State's witnesses at trial were the victim Robert Alanis, an officer at the Bell County Jail, and two other officers at the jail. Taplin, an inmate in the jail, did not testify or call any witnesses. The State's evidence was uncontroverted that Taplin threatened and then assaulted Alanis by striking Alanis during an incident that occurred in the hallway outside Taplin's cell when Alanis was collecting trash from inmates' cells and with other inmates in the hallway.
>
> Alanis testified that, when he had the door opened "about halfway" to Taplin's cell so he could collect trash, Taplin "started being aggressive and yelling towards" Alanis, "stepped out" of his cell, "got in [Alanis's] face and to where [Alanis] felt unsafe," and "lunged towards [Alanis]" making Alanis "feel unsafe." According to Alanis, when the cell door was opened, Taplin told Alanis that he was "going to fuck you up for messing with my brother." Alanis testified that after he felt "unsafe," he "started trying to escort [Taplin] back into his cell where [Taplin] became violent and started striking." Consistent with Alanis's testimony, a 5:52-minute video recording of the incident that was admitted as an exhibit at trial shows Alanis rolling the trash can down the hallway until he reached Taplin's cell, Taplin leaving his cell, moving quickly toward Alanis in the hallway outside of Taplin's cell, and getting very close to Alanis and in his face before Alanis placed his hands on Taplin. Alanis also testified that he was doing his job when he tried to gain control of Taplin by placing his hands on him and directing him back to his cell. Alanis explained that his job is to try to control this type of situation for the "[s]afety and security of us as officers and for the people that we house that are incarcerated" and that he "used verbal commands" like "let's get back inside" and placed his hands on Taplin to try to get him to return to his cell.
>
> One of the other officers testified that he "went down to try to assist and try to help" when he "saw Mr. Taplin had Mr. Alanis in a headlock" and that Taplin initially did not cooperate with the officer's attempts to restrain him. The officer "tr[ied] to restrain [Taplin]'s arms so that he [could not] strike Robert Alanis or anything, to not bring any more harm to him." The other officer testified that he also assisted Alanis after Taplin had Alanis's "head in a headlock" and that he "ran to assist and deescalate the situation and help secure the inmate." He agreed that an officer may direct an inmate back to his cell by use of physical contact and that this particular situation was "even more" dangerous because of the other individuals in the hallway. The video recording shows six inmates in the hallway prior to the third

> officer arriving to assist Alanis and, after the third officer's arrival, two to three additional inmates are seen in the hallway.

*Taplin v. State*, No. 03-19-00357-CR, 2020 WL 6121971, at *1 (Tex. Ct. App.—Austin, Oct. 15, 2020, pet. ref'd). Petitioner appealed his conviction on the ground that the trial court erred when it refused to charge the jury on self-defense. On October 15, 2020, Petitioner's conviction was affirmed on appeal. *Id.* Petitioner then filed a Petition for Discretionary Review (PDR), again challenging the trial court's refusal to charge the jury on self-defense. On January 13, 2021, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's PDR. *Taplin v. State*, No. PD-1047-20 (Tex. Crim. App. Jan. 13, 2021). Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. (ECF No. 1 at 3.)

On February 3, 2021, Petitioner executed his federal habeas petition, arguing the trial court erred when it refused to charge the jury on the issue of self-defense. (ECF No. 1.) On May 28, 2021, Respondent filed his response. (ECF No. 8.) Petitioner has not filed a rebuttal.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## **III. Analysis**

1. Failure to Charge Jury on Self-Defense

Petitioner's only claim is that the trial court erred when it refused to charge the jury on the issue of self-defense. Petitioner raised this argument in his direct appeal and again in his PDR, which the TCCA refused. Because the TCCA refused Petitioner's PDR, the Third Court of Appeals has the last reasoned state-judgment regarding this claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *see also Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986) (to exhaust state remedies, a Texas prisoner must present both the factual and legal substance of a claim in a procedurally proper manner to the TCCA in either a PDR or an application for writ of habeas corpus under Texas Code of Criminal Procedure art. 11.07.)

At the charge conference, Petitioner's counsel asked the trial court to include "some type of language in the charge [about self-defense] because it appears to me that Mr. Taplin acted only after some type of force was used against him. What the degree of force is, obviously, is up to the jury, but it does appear that it was only at that time that he acted." The State opposed an instruction on self-defense, arguing a video of the incident in question "shows a touching that is not forced, as well as you don't get to go initiate the altercation and then claim self-defense. And so we do not believe that this particular set of circumstances has met even the minimal threshold for self-defense inclusion." The trial court denied the request. (ECF No. 9-20 at 8.)

After discussing the legal standard for self-defense under Texas law and applying that standard to the facts of Petitioner's case, the Third Court of Appeals concluded that because the trial record did not reflect evidence that would support a rational finding on each of the elements of self-defense, Petitioner was therefore not entitled to an instruction on the issue. *Taplin*, 2020 WL 6121971 at *2-4.

Improper jury instructions in state criminal trials do not generally form a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The relevant inquiry on claims of improper jury instructions is not whether state law was violated, but whether there was prejudice of constitutional magnitude. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Errors in jury instructions are subject to harmless-error analysis. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Accordingly, habeas corpus relief is not warranted unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993); Galvan, 293 F.3d at 764-65. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In a collateral proceeding, the question is not "whether the instruction is undesirable, erroneous, or even universally condemned," but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp*, 414 U.S. at 147).

Petitioner does not cite to any United States Supreme Court opinion holding that the trial court's refusal to give an instruction on self-defense violated the defendant's right to due process. *See Chester v. Thaler*, 666 F.3d 340, 345 (5th Cir. 2011) ("The first step in determining whether a state court unreasonably applied clearly established federal law is to identify the Supreme Court holding that the state court supposedly unreasonably applied."). It is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established by the United States Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009); *Sprouse v. Stephens*, 748 F.3d 609, 616 (5th Cir. 2014). Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of federal law, and Petitioner has not shown that the lack of a jury instruction on self-defense had a substantial or injurious influence on the jury's verdict. As held by the Third Court of Appeals, there was insufficient factual evidence to support a self-defense instruction under Texas law. Accordingly, this claim is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue.

SIGNED this 14th day of February, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE